UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 19-cr-00043-01 |
| VERSUS | CHIEF JUDGE HICKS |
| CHRISTOPHER DONTA WILLIS (01) | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Christopher Donta Willis ("Defendant") was charged by indictment with conspiracy to distribute narcotics, possession of narcotics with intent to distribute, unlawful transport of firearms, and possession of a firearm in furtherance of a drug-trafficking crime. Doc. 54. The charges arise out of a traffic stop for following too closely. As a result of the stop, Louisiana state troopers discovered methamphetamine in Defendant's jacket pocket and in his vehicle. Defendant's home was then searched, and the troopers discovered additional drugs and a firearm.

Before the court is Defendant's **First Motion to Suppress (Doc. 53)**. Defendant argues that (1) the state trooper did not have objectively reasonable suspicion to initiate the traffic stop, and (2) La. R.S. 32:81 (Following vehicles) is unconstitutionally vague. For the reasons that follow, it is recommended that Defendant's motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress, and the following facts were established. Matthew Titus, a trooper with the Louisiana State Police, received information

from the DEA Task Force regarding possible narcotics trafficking. Agents told Trooper Titus that someone in a gray Chrysler 300 was suspected of transporting and selling narcotics, and the Chrysler was leaving a location off of Benton Road. Tr. 17-19. Trooper Titus saw the suspect car traveling south on Airline Drive. The posted speed limit in the area was 35 miles per hour, and traffic was "pretty thick." Tr. 5-6.

The Chrysler was driving approximately 35 miles per hour and was less than a car length away from the pickup truck in front of it. Trooper Titus testified that, based on his training and experience, the car should have been at least two-and-a-half to three car lengths behind the truck. At that time, the two vehicles were traveling toward a light that had turned yellow. The pickup truck went through the intersection, and the Chrysler stopped at the light. Trooper Titus testified that, if the driver of the pickup truck had hit his brakes forcibly to stop at the light, the Chrysler could have rear-ended him. Tr. 7-8.

Trooper Titus initiated his lights to stop the Chrysler for following too closely. Tr. 8. When he activated his lights, his dash camera began recording; however, the camera did not record the initial traffic violation.[1] Tr. 10.

Trooper Titus made contact with Defendant, who was driving the Chrysler, and Jamal Walker, who was in the passenger seat. When Trooper Titus asked for Defendant's driver's license, he noticed that Defendant's hands were trembling and that defendant was constantly breaking eye contact. Tr. 11. Trooper Titus noticed that Walker's hands were also shaking. Tr. 12.

---

[1] The recordings from the trooper's dash camera and body camera were admitted into evidence as Govt. Ex. 1.

Trooper Titus conducted a pat-down of Defendant. During the pat-down, he felt "a round-type bag that felt like narcotics" in Defendant's sweatshirt pocket. Defendant and Walker then fled on foot. Tr. 12-13. As Walker fled, he dropped his jacket. Defendant and Walker were both eventually captured and arrested. Tr. 15. Narcotics detectives located approximately 116.4 grams of suspected methamphetamine inside Defendant's sweatshirt pocket. They also found approximately 35.9 grams of suspected methamphetamine in Walker's pants pocket. Tr. 15.

Trooper Titus put Walker's jacket back inside the Chrysler. He then deployed his K-9 on the vehicle. The dog alerted on the car, and Trooper Titus searched the vehicle. He found approximately 62.8 grams of suspected methamphetamine in Walker's jacket pocket. Tr. 15-16.

**Law and Analysis**

    **A. Reasonable Suspicion**

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 392 Fed. Appx. 246, 250 (5th Cir. 2014), citing United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id. Defendant does not challenge the second prong of the Terry analysis.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005). "Reasonable suspicion" analysis requires assessing the totality of the circumstances to ascertain the reasonableness of the suspicion. United States v. Powell, 732 F.3d 361, 369 (5th Cir. 2013) (citation omitted). This is consistent with the "touchstone of Fourth Amendment analysis [being] reasonableness," which "requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement." United States v. Brigham, 382 F.3d 500, 507 (5th Cir.2004) (en banc).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." United States v. Zavala, 541 F.3d 562, 575 (5th Cir. 2008) (quoting United States v. Castro, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)). Therefore, probable cause to make a traffic stop exists when a defendant commits a traffic violation and a law-enforcement officer observes the violation. See, e.g., United States v. Khanalizadeh, 493 F.3d 479, 482 (5th Cir. 2007).

"The rule established by the Supreme Court in Whren allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the

stop." United States v. Cole, 444 F.3d 688, 689 (5th Cir. 2006). But the legal justification for the traffic stop must be "objectively grounded." Id.

Defendant argues that Trooper Titus lacked reasonable suspicion to initiate the traffic stop. Defendant claims that he was travelling in "bumper-to-bumper traffic," and was not operating his vehicle in a dangerous or unreasonable manner. The Government responds that once Trooper Titus observed Defendant's vehicle following too closely behind the truck, he had reasonable suspicion to believe that Defendant committed a violation of Louisiana traffic laws, specifically Louisiana Revised Statute 32:81. That statute states in relevant part:

§81. Following vehicles

A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.

Defendant filed three separate post-hearing letter briefs. (Docs. 72, 74, & 76). Defendant argues that Trooper Titus did not follow the correct legal standard when he defined "following too closely." Trooper Titus testified that Defendant should have been three-and-one-half car lengths behind the truck, given the speed limit on the road. He also testified that, as a general rule, a driver should ideally stay at least two seconds behind the vehicle in front of them. Defendant argues that neither of these rules is the legal standard. The correct legal standard is not to follow more closely than is "reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." La. R.S. 32:81. Defendant argues that Trooper Titus' testimony was self-serving and was not substantiated by the dash camera video, which was activated after the

traffic violation occurred, or by testimony of other officers who presumably could have witnessed the violation. Finally, Defendant argues that he could not have been following too closely to the truck because he was able to slow down and stop at the red light.

The court finds that Terry's first prong is met. Trooper Titus' testimony was very credible when he testified that he observed Defendant's vehicle following too closely behind the truck. When asked for his understanding of what is required regarding following too closely, he stated, "Reasonable and prudent distance based off of traffic on the roadway and speed." Tr. 6. This is the correct legal standard. He simply described objective methods that may be used to determine what is reasonable and prudent under the various circumstances. He also testified that, if the truck had attempted to stop at the yellow light, "there could have been a crash." Tr. 8. Accordingly, Trooper Titus had reasonable suspicion to initiate the traffic stop.

### B. Vagueness of Louisiana Revised Statute 32:81

Defendant argues that Louisiana Revised Statute 32:81 is unconstitutionally vague and overbroad and does not sufficiently define, describe, and specify the criminal conduct in a manner that a reasonable person could properly apply each and every requirement of the law. Defendant complains that what constitutes "reasonable and prudent" is a wholly subjective test with no objective standard.

The Fifth Circuit employs a two-part void-for-vagueness test. First, the law may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; or second, the law may authorize and even encourage arbitrary and discriminatory enforcement. United States v. Escalante, 239 F.3d 678, 680 (5th Cir. 2001).

As this court has previously found, La. R.S. 32:81 does not violate either test. United States v. Garcia, 2015 WL 8660838, *6 (W.D. La. 2015). A person of ordinary intelligence should know that following less than a car length behind a truck at 35 miles per hour is too close to be safe. Although the statute is broadly worded, it does not encourage the police to stop drivers on a whim.

Accordingly,

It is recommended that Defendant's **Motion to Suppress (Doc. 53)** be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of September, 2019.

_____
Mark L. Hornsby
U.S. Magistrate Judge